PER CURIAM.
The Lake County Property Appraiser appeals from a final judgment in favor of the plaintiff taxpayer who brought an action to contest the assessment for ad valorem tangible personal property and inventory taxes for the years 1977 and 1978.
The plaintiff/appellee, W. M. Gurley d/b/a Williams Distributing Co., hereinafter referred to as “taxpayer”, is a wholesaler of petroleum product with his primary place of business in Memphis, Tennessee. He maintains a warehouse and office in Lake County, Florida. The taxpayer conceded that he has during the subject years maintained a limited standing inventory which acquired a tax situs in Lake County. This action concerns merchandise shipped from Memphis to the Lake County warehouse which was not returned for taxation by the taxpayer. The merchandise consists of containerized petroleum products, and related additives, packaged in cardboard containers. The taxpayer’s salesmen take orders in Florida. The orders are telephoned to the Memphis office. When sufficient orders have been received to fill a tractor-trailer rig, the merchandise is shipped on pallets in taxpayer’s trucks to the Lake County facility. Then the merchandise is unloaded and stacked in the warehouse complex until separated for delivery by smaller trucks to the customers who placed the orders. Remittance by the purchaser is made through a Lake County bank to the Memphis office.
The taxpayer’s personal property tax returns for the years 1977 and 1978 excluded that portion of the inventory which the taxpayer claims was “in transit” and protected by the Commerce Clause.[1] The return was prepared by counting the merchandise on the premises, pricing it at wholesale cost and then deducting the retail price of the orders taken but not yet filled. The property appraiser attempted to obtain back-up information from the taxpayer concerning the valuation of the inventory, but the back-up information was not made available. As a result, the tangible personal property and inventory returns of other wholesale petroleum products distributors were obtained. The returned value of inventory of one of those businesses was then computed on a square-foot basis, and that dollars-per-square-foot factor was applied to the taxpayer’s warehouse storage capacity.[2]
The Lake County Board of Tax Adjustment approved the property appraiser’s assessment. Undaunted, the taxpayer went to court. The taxpayer refused to make available to the property appraiser upon earlier request, or later in court, his income statement, balance sheet or Schedule “C” of his federal income tax return. Both 1977 and 1978 returns were based on a single day’s count, rather than on the average *111 value of the inventory during the year as required by Section 192.032(3), Florida Statutes (1977).
The trial court held that the interstate commerce character of the merchandise in transit was interrupted only at the staging area for the purposes of separating the goods and placing them in smaller vehicles for transport to the ultimate purchasers, which did not deprive the goods of the protection of the Commerce Clause. Therefore, the goods did not become standing inventory subject to ad valorem taxation in Lake County, Florida. The trial court reasoned that it did not seem equitable for the determination of whether the merchandise acquired a tax situs in Lake County, Florida, to depend upon the mere physical placing of a sticker or label designating the customer on packages or containers prior to shipment from Tennessee. The court held that the property appraiser’s estimate was invalid, null and void, and further held that the values of the taxpayer’s average inventory held for sale in Lake County were the values given by the taxpayer in his 1977 and 1978 returns.
We disagree. The merchandise was no longer in transit and became inventory subject to taxation once the merchandise reached the taxpayer’s warehouse and was held there for an indeterminate length of time to be broken down and then distributed to customers. See State of Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933); Bacon v. Illinois, 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615 (1912); Brown v. Houston, 114 U.S. 622,5 S.Ct. 1091, 29 L.Ed. 257 (1884); Mikos v. Ringling Bros. Barnum & Bailey Combined Shows, Inc., 368 So.2d 884 (Fla. 2d DCA 1979); Arthur Walter Seed Co. v. McClure, 236 Ind. 666, 141 N.E.2d 847 (1957). In addition, even if the merchandise may be considered to be in transit, the application of Florida’s ad valo-rem property tax in the case at bar does not violate the Commerce Clause, since the inventory in the warehouse has a sufficient nexus with the state to justify a tax, the tax is fairly related to benefits provided by the state to the taxpayer, the tax does not discriminate against interstate commerce, and the tax is fairly apportioned to local activities. See, Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); see also, Green v. Western Union Telegraph Co., 123 So.2d 712, 715 (Fla.1960); Armstrong v. City of Tampa, 118 So.2d 195 (Fla.1960); State v. Maxwell Motor Sales Corp., 142 Minn. 226, 171 N.W. 566 (1919); see generally, Clark, A State’s Tax Jurisdiction As Limited By The United States Constitution, 13 U.F.L.Rev. 401, 420 (1960); 71 Am.Jur.2d, State and Local Taxation, § 247.[3] Therefore, the reduction of the inventory estimate to account for merchandise in transit was erroneous.[4]
The trial court also held that the property appraiser’s valuation of the taxpayer’s inventory was arbitrary and unreasonable. The county tax appraiser derived his values for the taxpayer’s 1977 and 1978 inventory by multiplying the square-foot *112 age in the taxpayer’s warehouse (18,800) by $33.50. The $33.50 was based on the square footage of the warehouse of another wholesaler, Roquemore Oil Co., in Orlando, Florida, divided by the value of its average monthly inventory for 1977 (11,000 square feet; $368,683.00). The trial court found this method of valuation unreasonable and arbitrary for two reasons. First, the taxpayer’s business operation was different from Roquemore’s. He handles many more oil product lines than Roquemore; Roque-more handles some expensive assessories not handled by the taxpayer; and the cost to the taxpayer of the products sold is less because of his multi-state operations and methods of purchasing. In addition, Roque-more’s inventory, value included underground storage tanks of bulk oil which the taxpayer did not have. Second, the tax assessor failed to consider that the taxpayer’s warehouse was (by his own observation) approximately 60% full; whereas Roque-more’s 11,000 square foot warehouse was operating in 1977 at almost 100% of its capacity. The record sustains the trial court’s findings concerning the unreasonableness of the tax assessor’s valuation in this case; and we have no basis to overturn that finding. Ray v. Dock and Marine Construction, Inc., 183 So.2d 237 (Fla. 3d DCA 1966); Frell v. Frell, 154 So.2d 706 (Fla. 3d DCA 1963).
Even if the taxpayer fails to file a tangible personal property tax return, the tax assessor cannot levy an arbitrary tax.
To deny an owner who has failed to file his required tax return the right of having the validity of an assessment judicially or administratively reviewed is to deprive such owner of his property without due process of law and to expose him to the imposition of arbitrary penalties beyond those provided.
C. D. Utility Corporation v. Maxwell, 189 So.2d 643 at 647 (Fla. 4th DCA 1966).
The taxpayer in this case did not provide the tax assessor with cost values for his inventory for 1977 or 1978, and he was evasive and less than candid with the trial court. He stated he had no such figures for 1977; but he testified from his knowledge and opinion, the inventory was worth $223,-900 in 1978. The record disclosed other wholesale oil distributors whose inventories priced out at below $33.50 per square foot. Perhaps their businesses were more comparable. Gross sales might also be another method of arriving at fair values. This approach was also not considered or used.
The taxpayer and the trial court both apparently relied on the theory that the bulk of the taxpayer’s inventory was not taxable because it was in “Interstate Commerce”. Although this court does not agree with that theory, the taxpayer’s reliance should not be too strongly faulted because it was induced by a letter written June 22, 1977 to the taxpayer by Larry DeFrances, Ad Valorem Tax Counsel of the Department of Revenue, State of Florida:
On the other hand, if the shipments of oil brought by Williams Co. into Florida are earmarked solely to fill orders already placed by specific customers, this oil would not be inventory for tax purposes, even though it is brought to a staging point and stored until delivery is convenient. However, I am of the opinion that if any order were filled from the supply of oil earmarked for another customer and awaiting delivery, this transaction could be construed as evidence that the entire supply of oil constituted a standing inventory, which would be taxable. The distinction is that where the oil is already in Florida when the order is placed, filling the order from this stock amounts to delivery of inventory. The problem is of course,' a factual one, and one which must be resolved by adequate proof of the method of operation the company uses.
Mr. DeFrances said the critical question was whether the goods were in Florida when the orders to buy were placed, or whether they were shipped in, in response to orders. Since the latter was the taxpayer’s method of doing business, he relied on the non-taxability of the bulk of his inventory.
Because of the basic misconception by the trial court that the bulk of the taxpayer’s *113 inventory was not taxable, it made no determination concerning the fair value of the inventory for tax purposes. Accordingly this matter is remanded to the trial court to determine the proper tax assessment value. Simpson v. Merrill, 234 So.2d 350 (Fla.1970). Because of the lapse of time since the trial of this matter, the trial court shall be permitted to reopen this case, take new testimony, or revisit prior testimony, by reviewing the prior record or hearing testimony, as it may deem appropriate. Palm Corporation v. Homer, 261 So.2d 822 (Fla.1972). On remand, the taxpayer is on notice to produce income and cost data for his inventory or suffer the consequences of having it valued on a comparative or other method.
REVERSED and REMANDED.
ORFINGER, COBB and SHARP, JJ., concur.

. Article I, Section 8, Clause 3, United States Constitution.

. The property appraiser’s estimates were:
1977 $629,990.00
1978 “in excess of $700,000”
The taxpayer’s returns for standing inventory were based on the following figures:
1977 $150,572.00 Total inventory
-114,620.00 “in transit" inventory
$ 36,952.00 Inventory Returned (25% of this amount was taxable at the applicable Lake County millage rate in 1977, see § 193.511, Fla.Stat. (1975).
1978 $223,905.61 Total inventory
-135,791,94 “in transit” inventory
$ 88,103.67 Inventory returned (10.% of this amount was taxable at the applicable county millage rate in 1978, see § 193.511, Fla.Stat. (1977).

. See also the following analogous state tax cases, where the state’s power to tax as against the charge that the tax was burdening interstate commerce was upheld; Lewis K. Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929 (1933) (privilege tax); Sonneborn Bros. v. Keeling, 262 U.S. 506, 43 S.Ct. 643, 647, 67 L.Ed. 1095 (1922) (occupation tax). General Oil Co. v. Crain, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754 (1907) (inspection fee); See also, the following analogous cases dealing with Article I, Section 10, Clause 2, United States Constitution, the Import-Export clause, which support the conclusion that the merchandise here has come to rest, and is no longer in transit for purposes of Commerce Clause protection: Michelin Tire Corp. v. Wages, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976); Fred McGil-vray, Inc. v. Askew, 340 So.2d 475 (Fla. 1976); Overstreet v. Sea Containers, Inc., 348 So.2d 628 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1219 (Fla. 1978).

. Although not necessary to decide this issue, we express serious doubt concerning the taxpayer’s method of calculating the interstate commerce exclusion by pricing total inventory at cost (apples) less “in transit” inventory price at retail to customer (oranges). See Hillsborough County v. Knight & Wall Co., 153 Fla. 346, 14 So.2d 703 (1943); Aeronautical Comm. Equip., Inc. v. Metropolitan Dade County, 219 So.2d 101 (Fla. 3d DCA 1969), cert. denied, 225 So.2d 911 (Fla.1969).