464 So.2d 182 (1985)
S.F. WHITMAN, D.A. Whitman, and W.F. Whitman, Petitioners,
v.
Franklin B. BYSTROM, As Property Appraiser of Dade County, Florida, Respondent.
No. 84-1431.
District Court of Appeal of Florida, Third District.
February 5, 1985.
Rehearing Denied March 20, 1985.
*183 Fine, Jacobson, Block, England, Klein, Colan & Simon and Stuart L. Simon, Miami, for petitioners.
Robert A. Ginsburg, County Atty. and Daniel A. Weiss and Craig Coller, Asst. County Attys., for respondent.
Before DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
The Whitmans, hereafter called the taxpayers, are partners in the ownership of a shopping center in Bal Harbour, Florida, known as the Bal Harbour Shops. In a suit brought by the Property Appraiser of Dade County to restore a 1981 assessment that had been reduced by the Property Appraisal Adjustment Board, the taxpayers were ordered to produce for examination and inspection their personal income tax returns and other financial records pertaining to the income and expenses of the property for the three-year period beginning in 1980. They seek review of that order by writ of certiorari. We grant the writ and quash the order.
The Property Appraiser valued the Bal Harbour Shops property for 1981 at $18,101,841. The taxpayers challenged the assessment before the County's Property Appraisal Adjustment Board. The Board adopted the recommendation of a special master that the assessment be reduced from $18,101,841 to $16,291,656. The Property Appraiser, aggrieved by this result, filed suit against the taxpayers, seeking to have his assessment restored, and in that suit requested that the taxpayers produce personal income tax returns and other income and expense statements on the property for 1980, 1981 and 1982. Over the taxpayers' objection, the trial court compelled the production.
It is undisputed that the Property Appraiser, using an income approach to arrive at value, formulated his 1981 assessment on the Bal Harbour Shops without having access to the actual income and expense records of the taxpayers which he now seeks. It is also undisputed that the taxpayers challenged the assessment, not by questioning the amount of net income attributed to the property by the Appraiser, but rather by questioning the capitalization rate which the Appraiser applied to the hypothesized net income figure. Under these circumstances, say the taxpayers, the production of these and like records may not be compelled.
The Appraiser contends that Section 195.027(3), Florida Statutes (1979), and a Department of Revenue Rule promulgated thereunder, specifically authorize the production of the records, but even absent such authority, the records, as any other relevant evidence, are discoverable under the Florida Rules of Civil Procedure.
We begin with the statute relied on by the Appraiser. Section 195.027(3), Florida Statutes (1979), provides as follows:
"(3) The rules and regulations shall provide procedures whereby the property appraiser, the Department of Revenue, and the Auditor General shall be able to obtain access, where necessary, to financial records relating to nonhomestead property, which records are required to make a determination of the proper assessment as to the particular property in question. Access to a taxpayer's records shall be provided only in those instances in which it is determined that such records are necessary to determine either the classification or the value of the taxable nonhomestead property. Access shall be provided only to those records which pertain to the property physically located in the taxing county as of January 1 of each year and to the income from such property generated in the taxing county for the year in which a proper assessment is made." (emphasis supplied).
Pursuant to Section 195.027(1), the Department of Revenue promulgated Rule 12D-1.05, Rules of the State of Florida Department of Revenue, Division of Ad Valorem Tax, which provides in pertinent part:
"(1) The appraiser of each county, duly authorized representatives of the Department, *184 and duly authorized representatives of the Auditor General shall have the right to inspect and copy financial records relating to non-homestead property which are reasonably necessary to determine the property [sic][1] assessment of the property in question.
"(a) Access to a taxpayer's records shall be provided only where it is determined that such records are necessary to determine both the classification and value of the taxable non-homestead property.
... .
"(2) The following procedures shall govern access to the records of a taxpayer:
"(a) The appraiser or his duly authorized representative, the duly authorized representative of the Department, or the duly authorized representative of the Auditor General shall make request, in writing, of the taxpayer and shall specify in general the records requested.
"(b) The request shall state the purpose of the request, and the time and place at which the records shall be produced by the taxpayer. If the records are located without the county, the taxpayer shall have ten (10) days following the request in which to make them available for inspection and copying.
"(c) All records produced under this section shall be returned to the taxpayer as expeditiously as possible under the circumstances, after examination by the requesting agency.
"(d) In the event the taxpayer shall refuse, after written demand, to make production of the books and records requested, the requesting agency shall have the right to proceed with an original action in the Circuit Court for an application to the court for a subpoena duces tecum and production of the records in question.
"(3) All records produced by the taxpayer under this rule shall be deemed to be confidential in the hands of the appraiser, the Department and the Auditor General, and shall not be divulged to any person, firm or corporation."
Before the advent of Section 195.027(3) in 1973,[2] the law in Florida was that, pre-assessment, a property owner was not required to reveal his income and expense records to the Appraiser, and the Appraiser was without authority to obtain such records. See Palm Corp. v. Homer, 261 So.2d 822 (Fla. 1972). Although the Appraiser argues that the statute is clear authority for his post-assessment access to the records, we believe the taxpayers are correct when they say that the plain language of the statute limits the Appraiser's access to these records to a situation in which the records are "required to make a determination of the proper assessment as to the particular property in question." The taxpayers correctly point out that since the Appraiser assessed the property without these records, it follows that the records were not required or necessary to determine the value of the property. We conclude with the taxpayers that the statute, and the implementing rule, are limited to pre-assessment requests for records and do not authorize an order, as in this case, compelling post-assessment production.[3]
But while necessity may be the sine qua non of pre-assessment entitlement to a taxpayer's financial records, it appears that mere relevance is the only predicate for post-assessment discovery under the rules of civil procedure. Indeed, as the Appraiser correctly observes, this court in Homer v. Connecticut General Life Insurance *185 Co., 213 So.2d 490 (Fla. 3d DCA 1968), directly held that a taxpayer's income and expense records are relevant and thus discoverable in litigation involving the correctness of an assessment, notwithstanding that such records were not used by the Appraiser in making the assessment. As we there said, the issue being litigated is "the amount of the assessment, not the manner of arriving at it." Id. at 492.
In the present case, however, the taxpayers, unlike the taxpayers in Homer v. Connecticut General, do not base their claim that the records are not relevant solely on the fact that the Appraiser did not use them in making the assessment. Instead, these taxpayers assert that the records are not relevant because they are probative only of the income earned from the ownership of the property, an issue which is not being litigated. Although the taxpayers challenge the total assessment, they have conceded that the income figure hypothesized by the Appraiser is correct. Under such circumstances, it is clear to us that ordering the production of these records over objection is an abuse of discretion. As the committee note to Florida Rule of Civil Procedure 1.350 states, the trial court must "weigh the need for discovery and the likely results of it against the right of privacy of the party or witness or custodian." Here, there being no disputed issue to which the taxpayers' records are germane, there is no need for discovery, see Jacobs v. Jacobs, 50 So.2d 169 (Fla. 1951), and the taxpayers' right of privacy[4] would be needlessly invaded if production of the records were required. See, e.g., Palmar v. Palmar, 402 So.2d 20 (Fla. 3d DCA 1981) (where party stipulates that he can adequately pay an increase in child support, inquiry into his present financial circumstances is foreclosed); Schottenstein v. Schottenstein, 384 So.2d 933 (Fla. 3d DCA), rev. denied, 392 So.2d 1378 (Fla. 1980) (same); Meltzer v. Meltzer, 356 So.2d 1263 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 460 (Fla. 1979) (same).
Certiorari granted; order under review quashed.
NOTES
[1] Since the Rule employs the language of the statute, the phrase was probably intended to read "reasonably necessary to determine the proper assessment."
[2] This section was enacted in 1973 and became effective on January 1, 1974. Ch. 73-172, § 2, Laws of Fla.
[3] Our holding leaves undisturbed the proposition that taxpayers who refuse the Appraiser access to their records may not thereafter affirmatively use the records to bolster their position in later litigation concerning the accuracy of the assessment. See Palm Corp. v. Homer, 261 So.2d 822; see also Havill v. Gurley, 382 So.2d 109 (Fla. 5th DCA 1980).
[4] Although an individual's financial affairs are not clothed with a privilege or immune from inquiry, the confidential nature of such affairs is well recognized. See Fryd Construction Corp. v. Freeman, 191 So.2d 487 (Fla. 3d DCA 1966). More specifically, Section 195.027(3), Florida Statutes (1979), evinces this same respect for the private nature of the financial records of its citizen-taxpayers by requiring a showing of necessity as a predicate for pre-assessment production. Department of Revenue Rule 12D-1.05, which, in addition to carrying over the statutory requirement of necessity, provides for the expeditious return of the records and maintains their confidentiality in the hands of the Appraiser, shows this same sensitivity to the private nature of financial records.